Chief Justice Robertson,
delivered the opinion of the court.
Tins is an action of covenant, brought by John Pryor, against the executors of Abraham S. Barton, in which he obtained a judgment by default, for damages assessed by a jury.
As the. covenant is not exhibited, the declaration furnishes the only means for ascertaining its import and effect.
The declaration avers, that Joseph linger having addressed to A. S. Barton a writing in which he acknowledged that he had received fiom Pryor forty-one hunch ed and one quarter, and ten pounds of hemp, at $5 and the rise, Barton in consideration thereof, on the tenth day of August, I81-Í, "by his certain covenant endorsed on the back of said instrument of writing, and to which he subscribed his name, did covenant, undertake and agree to, and with the said plaintiff, to fulfil the terms of said receipt or writing made by said Linger on demand, and then and there, and thereby, covenanted to pay to said plaintiff ‡5 per hundred weight, for said hemp so delivered by him, and the rise *453 in the market price of hemp at the. time he might demand payment.’1'1 .
Covenant to hem”!Imports thatcovenan-will pay-^¿tiia^may take place on that sum in 'luring- the market sea-liJe’chite^o^fhe covenant; and if no time ■ the aggregate §"e°a™hebe close of that market season
If a fixed • price and the rise are to be "^¡ther the price nor the rise will be due before demand.
^ The suit was brought on the 11th September, 1837. The declaration does not aver any demand. The defendant in error seem; to have supposed that the writ was a sufficient demand, and tint!; he was entitled to the market price of hemp (sS) at the date of the writ. The damages assessed by the jury, are about equal to $8 a hundred.
The case must be decided on the construction of the covenant as described in the declaration. In constru- • ing the covenant therefore, we shall dispose of the case, and.need not notice any other question.
A covenant to pay §5 dollars and the rise, without any other words of restriction, qualification or expían-ation, imports ucx vi termini” according to the subject matter, and the popular understanding and usage, that the covenantor will pay $5 and any rise that may take place on that sum, in the market price of the commodity, during the current market season then commenced for that article. And if no time he stipulated, the aggregate price will be due at the close of that market season. Or if a tixed price and the rise are to be paid on demand, neither the one nor the other will be due before demand. Such may be the tenor of the covenant in this case. If so, the defendant in error would be entitled, on demand, to 8-5 a hundred, and whatever more hemp rose to, during the season, during which he sold his hemp to Barton.
If during that season, hemp did not rise, he would be entitled to only %5 a hundred on demand. It could not be presumed, that a purchaser of hemp or tobacco would undertake to pay for the article, not only the market price, at the date of his contract, but in addition thereto, whatever might be the excess above that price, in the market price, for an indefinite series of years. Unreasonable, unequal, and unusual however, as such a contract would be, a purchaser would be bound by it, if he were to make it. But such a construction should not be given to a contract, unless its terms were so plain and explicit, as to leave no reasonable inference, that the parties intended any thing else.
*454 It is contended in this case, that the expressions “at the time when payment shall be demanded,” qualify the import of the words “$5 and the rise,” and clearly convey the idea, that the parties meant that the rise should not depend on any fixed period of time, or other test, beyond the contract of either party, but should depend exclusively on the contingency of a demand by the covenantee; or in other words, that he is entitled to whatever was the market price of hemp at the time when he demanded payment. We cannot concur in this construction. Ttie demand, as we understand the covenant, refers (not to the rise alone: a demand was necessary for the $5 a hundred. The ,$5 a hundred, and the rise were payable at the same time.
The covenant is not, that Barton will pay for the rise, on demand; but it is that he will pay $>5 a hundred, and the rise in the price of hemp at the time when payment shall be demanded. This means either, that he would, on demand, pay $5 and whatever rise above that sum, there might be during that season; or that he would pay §5, and whatever the rise might be at the time of demand, whether within or beyond the season; or that he would pay S5, and whatever the rise might be when demanded during the season. The former is our construction of the covenant. The expressions “$5 and the rise,” without more, import the maximum market price, during the market season. This construction of the words will not be varied, unless their import he changed by other words, which cannot be reasonably construed, so as to have a proper effect, without controlling the abstract meaning of the words $5 and the rise. The covenant as to the demand can be literally so interpreted, as to have its proper and intended operation, without affecting the construction of the words “.§5 and the rise.”
Pryor wanted more than $5; he hoped that the market price on that crop of hemp, would rise higher than $5 before the close of the market. He was not therefore, willing to sell for $>5. Barton being in the market as a purchaser of hemp, was willing to give the market price, and therefore, agreed to do so. Such a contract might be exclusively advantageous to Pryor. He who buys a commodity for the market price, at the time of his contract, is sure not to give, more than the *455 maximum price during the market season. But be wbo agrees prospectively to give the maximum at all events, may have to pay more, but cannot pay less than the price at the date of his contract. Such a stipulation may not, therefore, be considered reciprocal. The stipulation as to the demand may, consequently, have been intended to apply to the rise only. For example, whilst Barton was willing to agree to pay the rise, he may not have been willing that Pryor should have the highest rise without any contingency; but that he too should incur some risk, by being bound to elect, during the market season, what particular rise he would take. For instance, he may have intended, that if hemp should rise during that season to $6, he would pay that price, provided Pryor should choose when that was the price, to take it and not wait for more; but that if he should not then demand the money, expecting that he would be benefitted by a higher rise, and hemp should fall to fi'5, instead of rising above $6, Prior should be entitled to only $5; and consequently, that if he made no election or demand, during the then market season, he would not be entitled to any rise. This we were at first, strongly inclined to consider the proper construction of the covenant. But considerations arising out of a more thorough reflection, and which need not be now detailed, have inclined us to a different interpretation. After all the reflection which we have been able to give to the subject in all its bearings, we are of opinion that Barton agreed to pay whenever demanded, after the close of the market season, for the crop which he purchased, $5, and whatever more per hundred weight, hemp might rise to during that season.
As the declaration contains no averment of any rise in the market season which has been designated, nor of any demand, Pryor was entitled to only $5 a hundred, and interest upon that sum from the date of his writ, if the jury had been disposed to allow the interest.
If during the market season when the contract was made, hemp rose above ‡5 a hundred, by averring and proving that fact, Pryor would be entitled to the rise; but if it did not rise during that season, he would be entitled to only ‡5 a hundred, and interest from the time of demand.
Wicklijfe and Wooley, for plaintiffi; Chinn, for defendants.
As ihe verdict is for more than the averments in the declaration justified, the judgment must he reversed, and the cause remanded for a new trial.